GMK:RDE:cmv

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAMPOIRE ORANGE, | : | No. 1:23-cv-393 |
| Plaintiff | : | |
| | : | |
| v. | : | (Judge Jennifer P. Wilson) |
| | : | |
| UNITED STATES OF AMERICA, et al. | : | Electronically Filed |
| | : | |
| Defendants | : | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

Plaintiff Shampoire Orange is a federal inmate who filed this lawsuit against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). *See* Doc. 1. Orange alleges that the Bureau of Prisons ("BOP") negligently celled him with a violent inmate and that, following an altercation with his cellmate on December 28, 2021, he was assaulted by BOP personnel resulting in injuries, including fractured ribs. *See id.* at 7-10. Orange's Amended Complaint, Doc. 29, is defective and subject to partial dismissal. Specifically, Orange's claims arising from the BOP's cell assignment are barred by the Discretionary Function Exception, and Orange otherwise fails to state claims for emotional distress or negligence. Accordingly, the Court should dismiss the Amended Complaint except to the extent it alleges assault and battery stemming from alleged punches by staff.

## PROCEDURAL HISTORY

On March 6, 2023, Orange filed a complaint against the United States and several individuals pursuant to the FTCA. *See* Doc. 1. After a brief enlargement of time, those defendants filed a Motion to Dismiss and/or for Partial Summary Judgement on July 10, 2023. *See* Docs. 12-14. Before responding to that motion, however, Plaintiff moved for leave to amend his complaint. *See* Doc. 21. Then, on September 22, 2023, this Court issued an order to show cause why this action should not be consolidated with Case No. 1:22-CV-01019 (M.D. Pa.), which is a related, separate pending action filed by Orange. *See* Doc. 22. The Court subsequently granted Plaintiff's motion to amend the complaint, denied the dispositive motion as moot, and afforded the United States leave to file a renewed dispositive motion regarding the Amended Complaint. *See* Doc. 28. Orange's Amended Complaint names the United States alone. *See* Doc. 29.

## FACTUAL BACKGROUND

**A.     Orange's Allegations in the Amended Complaint**

Orange alleges that on December 23, 2021, the BOP negligently celled him with Dontrace Blaine, a fellow inmate at USP Canaan who, according to Orange, had well-known violent tendencies. *See* Doc. 29 at 5. He alleges that he pushed the emergency button several days later to report verbal threats that Blaine made to Orange, but that staff refused to separate the inmates. *Id*. According to Orange,

Blaine started choking him shortly thereafter, leading Orange to press the emergency button again, but that staff still refused to separate them. *Id*.

Blaine then allegedly began punching and kicking Orange. *Id*. According to Orange, once Blaine's attack stopped, Orange hit the emergency button again. *Id*. Orange contends that even though Blaine's assault had stopped by the time they responded, staff nevertheless deployed chemical munitions. *Id*. After removing him from the cell, BOP staff allegedly struck Orange twice in the ribs. *Id*. at 7. Finally, Orange contends that he reported rib pain but that the BOP delayed administering an X-Ray, which ultimately revealed two broken ribs. *Id*.

### B. Orange's Amended Complaint

It is largely unclear what claims Orange means to bring against the United States. While the Amended Complaint does unequivocally describe (1) a negligence claim stemming from the BOP's decision to cell Orange with Blaine and (2) a claim for assault and battery related to staff allegedly punching him in the ribs. Orange otherwise fails to clearly identify the claims he intends to bring or the theories upon which he wishes to pursue liability.

For example, the Amended Complaint identifies both intentional and negligent infliction of emotional distress, both of which the United States assumes are derivative of the subject areas of the other claims (that is, that Orange allegedly suffered emotional injury from the negligent act of celling him with Blaine and from

3

the alleged intentional act of strikes to the ribcage), but Orange does not specifically say one way or the other. The Amended Complaint also lists "negligence and gross negligence" and "negligence to use reasonable care" without elaborating further as to which allegations or theories of liability pertain to each. *See* Doc. 29 at 4 ("Statement of Claim").

The Amended Complaint does factually allege that staff used unnecessary chemical munitions, though it is unclear whether Orange intends to plead a claim on those allegations at all. Similarly, while Orange's allegations imply an alleged delay in the provision of an X-ray, the Amended Complaint does not specifically identify a negligence claim on that basis either. Orange also describes staff not responding quickly enough to the emergency button, but even with those allegations it is vague what claim, if any, he intends to bring. Finally, it is ambiguous whether Orange intends the "negligence and gross negligence" and the "negligence to use reasonable care" to be independent claims or whether they are simply redundant of the negligence claim regarding the cellmate assignment. *See* Doc. 29 at 4 ("Statement of Claim").

Regardless, the Court should dismiss any claims to the extent they concern the decision to house Orange with Blaine, as that subject matter is barred by the Discretionary Function Exception. The Court also should dismiss any other "negligence" claims for failing to state a claim. Finally, because Orange failed to

allege a qualifying physical injury for both the negligent and intentional infliction of emotional distress claims, the Court should dismiss them. The United States does not seek dismissal of the assault and battery claim regarding the alleged punches to Orange's ribs.

## QUESTIONS PRESENTED

1. Whether the claims stemming from cellmate assignments are barred by the Discretionary Function Exception?

2. Whether the Amended Complaint fails to state claims stemming from alleged delayed medical treatment, delayed response to the emergency button, and misuse of chemical munitions?

3. Whether the Amended Complaint fails to state claims for emotional distress?

Suggested Answers: Yes

## LEGAL STANDARDS

**A.     Dismissal – Fed. R. Civ. P. 12(b)(1)**

"Federal courts are courts of limited jurisdiction," only possessing the power authorized by the Constitution and statutes. *Thulen v. Am. Fed. of State Cty and Mun. Emp. New Jersey Council*, 844 Fed.Appx. 515, 518 (3d Cir. 2021) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). As a starting point for this analysis, a district court should assume that it lacks subject matter jurisdiction, and the party asserting the claim bears the burden of establishing that subject matter jurisdiction exists. *See Kokkonen*, 511 U.S. at 377.

B.	Dismissal – Fed. R. C. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under this standard, the complaint must do more than plead facts that are "'merely consistent with' a defendant's liability."  *Id.*, *quoting Twombly*, 550 U.S. at 557.  To avoid dismissal, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## ARGUMENTS

A.	**The Discretionary Function Exception Categorically Precludes All FTCA Claims Stemming from Cellmate Assignments**

Subject to a number of exceptions, the FTCA waives the United States' sovereign immunity for damages in tort.  28 U.S.C. § 1346(b)(1).  One of those exceptions is the Discretionary Function Exception ("DFE"), which provides that the United States' liability under the FTCA may *not* be premised on "the exercise or performance or the failure to exercise or perform a discretionary function or duty … **whether or not the discretion involved be abused**." 28 U.S.C. § 2680(a) (emphasis added).

Application of the DFE involves two questions.  The first is whether the conduct at issue involves an "element of policy or choice." *United States v. Gaubert,*

6

499 U.S. 315, 322–323 (1991). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . .[.]'" *Id.* (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Regarding this first prong, it is well-settled that BOP determinations as to how to best "provide suitable quarters and provide for the safekeeping, care, . . . protection, instruction, and discipline" of inmates *all* involve an element of choice. 18 U.S.C. § 4042 (a)(2), (3); *see also Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008) (holding that Section 4042 "leaves the implementation of these duties to the discretion of BOP officials").

The second question asks whether the challenged conduct "is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–323. The focus of this inquiry "is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325. Thus, the United States need not show that the agency or employees actually weighed policy considerations in carrying out the act in question. *See, e.g., Cestonaro v. United States*, 211 F.3d 749, 754 (3d Cir. 2000). Rather, "[i]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the

regulations." *Gaubert*, 499 U.S. at 324. As to the second step of the DFE analysis, it is similarly well-established that "[p]rison administrators should be afforded wide-ranging deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security." *Donaldson*, 281 F. App'x at 77 (citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979)); *see also Rhoades v. Chapman*, 452 U.S. 337, 349 n. 14 (1981) (stating that prison officials have discretionary power over the safety of the institutions they operate).

Courts, including those in this District, have repeatedly held that the DFE bars claims that the BOP improperly housed, celled, and kept together incompatible and violent inmates. *See*, *e.g.*, *Rinaldi II*, 904 F.3d at 273-74; *Rinaldi v. United States* (*Rinaldi I*), 460 Fed. App'x. 80, 81-82 (3d Cir. 2012) (*Rinaldi I* is a separate case from the 2018 *Rinaldi II* precedential opinion); *Sargent v. United States*, 620 Fed. App'x 69, 70-71 (3d Cir. 2015); *Thrower v. United States*, 528 F. App'x 108, 110-11 (3d Cir. 2013); *Leath v. United States*, 2020 WL 489013, at *4 (M.D. Pa. Jan. 30, 2020); *Batista v. Danner*, 2014 WL 47746, at *6-7 (M.D. Pa. Jan. 3, 2014); *Coma v. United States*, 2021 WL 5761110 (M.D. Pa. Aug. 3, 2021), *report and recommendation adopted*, 2022 WL 1485717 (M.D. Pa. Mar. 31, 2022)).

As the Third Circuit explained in *Rinaldi II*, "housing and cellmate assignments unquestionably involve an 'element of judgment or choice,' for while

BOP officials must 'provide suitable quarters' and 'provide for the protection, instruction, and discipline of all' of its inmates, 18 U.S.C. § 4042(1)(2)-(3), neither that provision nor any other 'federal statute, regulation or policy' can be said to 'specifically prescribe[] a course of action' for such assignments that the BOP must follow." *Rinaldi* II, 904 F.3d at 273.  This satisfies the first prong of the DFE test. *Id.*  Addressing the second prong, the Third Circuit reasoned that "'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators,' and '[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain security.'" *Id*. at 273-74 (internal citations omitted).  The discretionary function exception, therefore, barred the tort claims.  *Id*. at 274.

Here, Orange alleges that the BOP negligently celled him with Blaine and maintained that cell assignment over his objections and despite Blaine's alleged violent reputation. Based on unequivocal Third Circuit precedent and its progeny in this District, the DFE takes such matters outside of the scope of the FTCA's sovereign immunity waiver.[1] This Court, therefore, is without subject matter

---

[1] Orange's allegations that the BOP refused to move cells because staff did not see blood does not alter the analysis.  *See* Doc. 29 at 5.  First, the DFE applies "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  Second, in *Leath*, another court in in this District rejected claims that the BOP refused to change a cellmate assignment unless and until an attack took place.  2020 WL 489013, at 4.

jurisdiction over that portion of Orange's claims. See Coma, 2022 WL 1485717, at *3 ("this court lacks subject matter jurisdiction over tort claims arising from the BOP's decisions to place Coma in the SMU and house Coma in a SMU cell with an allegedly incompatible and violent inmate").

**B.     Orange Fails to State a Claim for Delayed Medical Care**

To the extent it interprets the Amended Complaint as bringing a claim for delayed medical care, the Court should dismiss the same. The elements of a prima facie FTCA claim "must come from state tort law." CNA v. United States, 535 F.3d 132, 141 (3d Cir. 2008). Under Pennsylvania law, a negligence claim 'requires a showing of four elements: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." Brown v. United States, 2023 WL 2632811, at *13 (M.D. Pa. Mar. 24, 2023) (internal quotations omitted). Here, a reasonable interpretation of Orange's *pro se* Amended Complaint is that the BOP negligently delayed in the provision of medical care following his oral reports of rib pain. Any such claim, however, must fail.

"[U]nder Pennsylvania law, a plaintiff must allege sufficient facts to show that the defendant's negligence was both the cause-in-fact and the legal, or proximate,

---

Orange's allegations do not even reach the level of those in *Leath*, as he does not contend that BOP staff was in any way conditioning a housing change on a physical altercation. Orange's claim, therefore, is categorically barred by the DFE.

cause of her injuries." *Brown*, 2023 WL 2632811 at *15; *see also Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa. 2005) ("[T]he mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation.")  The Court should dismiss this claim because Orange has not plausibly alleged causation.  That is, the supposed delay in performing the X-ray did not, and could not, cause a rib fracture.

While Orange also alleges "pain and suffering" while waiting for the X-ray, he fails to identify treatment options for a rib fracture that would have been available earlier had there been no delay in the diagnosis.  Orange, therefore, fails to demonstrate how an immediate X-ray could have avoided his alleged pain and suffering from the rib injury.  Moreover, Orange specifically alleges that he was given a medical assessment in the immediate aftermath of his altercation with Blaine, but conspicuously omits any allegation that he was deprived of pain medication following that clinical encounter.  Orange's "pain and suffering" allegations, therefore, do not plausibly establish an injury for which there was a reasonably available medical treatment available, let alone a treatment delayed by the BOP.  The Court, consequently, should dismiss the Amended Complaint to the extent it includes a claim concerning delayed medical care.

C. **Orange Fails to State a Negligence Claim for Delayed Response**

To the extent the Court interprets the Amended Complaint as bringing a

11

negligence claim for the BOP's failure to respond with sufficient haste to the emergency button, that claim also must fail on causation grounds. Specifically, Orange has not – and cannot – demonstrate that any such delay proximately caused his injury, as he alleges that each supposed assault by Blaine had already concluded by the time that Orange pressed the button. *See* Doc. 29 at 5 ("[w]hen inmate Blaine stopped choking me I hit the emergency button again"; "[o]nce inmate Blaine stop[ped] punch[ing] me in the head I . . . push[ed] the emergency button"). In other words, Orange had already suffered his alleged injuries from Blaine by the time he pressed the button and the BOP's purported duty to respond arose, meaning that there is no conceivable way that a quicker response could have prevented injury.

Nor can Orange argue that staff negligently refused to move his cell after his emergency button pushes, as the decision to maintain his cell assignment falls within the scope of the Discretionary Function Exception, as set out in Section A, above. For all of these reasons, the Court should dismiss the Amended Complaint to the extent it brings a claim regarding the BOP's response to the emergency button.

**D.  Orange Fails to State a Claim Regarding Chemical Munitions and the Court Should Dismiss the Claims for "Negligence and Gross Negligence" and "Negligence to Use Reasonable Care"**

The Amended Complaint alleges that BOP staff deployed chemical munitions into the cell even though there was no ongoing physical altercation. Doc. 29 at 5. Orange is not clear, however, whether he means to bring a claim regarding those

allegations. The Amended Complaint is unequivocal that the assault and battery claim is limited to the BOP's alleged "punching Plaintiff in the ribs while he was handcuffed," so it is at least known that Orange does not intend to bring an intentional tort regarding those allegations. Doc. 29 at 4 ("Statement of Claim"). While the Amended Complaint does vaguely refer to "negligence and gross negligence" and "negligence to use reasonable care" as free-standing and independent claims, it is ambiguous exactly what Orange is alleging, what duties were allegedly breached, and what allegations he is relying upon in each instance. The Court should dismiss both claims on that basis without leave to file yet another amended pleading.[2]

### E. Orange Fails to State a Claims for Negligent and Intentional Infliction of Emotional Distress

Orange fails to state a claim for either negligent or intentional infliction of emotional distress. Among other things, a Plaintiff seeking to either bring claim

---

[2] To the extent the Court either declines to dismiss those negligence claims or interprets the Amended Complaint as brining some form of negligence claim stemming from the BOP's use of pepper spray or pepper balls, the United States alternatively moves for a more definite statement of the same under Rule 12(e). Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule further states that "[e]ach allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). The Amended Complaint does not meet these standards for the "negligence and gross negligence" and "negligence to use reasonable care" claims, as Orange does not link any particular set of allegations to those claims. If a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response," the Court may order plaintiff to provide a more definite statement of his claims.

under Pennsylvania law must plausibly allege "a manifestation of physical impairment *resulting from* the [emotional] distress." *Fulton v. U.S.*, 198 F. App'x 210, 215 (3d Cir. 2006) (emphasis added) (citing *Reeves v. Middletown Athletic Ass'n,* 866 A.2d 1115, 1122–23 (Pa. Super. 2004)). "This does not mean that the plaintiff must have suffered a contemporaneous physical injury *because* of defendant's conduct; *rather it requires a physical manifestation of plaintiff's emotional distress*." *Pressley v. Forrest*, 2013 WL 5567569 (E.D Pa. Oct. 8, 2013) (emphases added)

Here, while Orange alleges that he suffered physical injuries from the alleged assaults by Blaine and BOP staff, none of those injuries "resulted from" or were a "physical manifestation of" his alleged emotional distress.  The Court, therefore, should dismiss both the negligent and the intentional infliction of emotional distress claims for failing to state a claim.[3]  See *M.S. ex rel. Hall v. Susquehanna Twp. School*

---

[3] *But see Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 469 (M.D. Pa. 2022) (a plaintiff can plead negligent infliction of emotional distress by alleging a physical injury that preceded and caused the emotional distress).  Even if the Court were to conclude as a matter of law that Orange can plead negligent infliction of emotional distress by resorting to his physical injuries that preceded the ostensible emotional distress rather than from injuries stemming from such distress, Orange's claim still would fail.  That is, in order to state a claim for negligent infliction of emotional distress, a plaintiff first "must establish a prima facie case for negligence." *Humphries v. Pa. Sate Univ.*, 2021 WL 4355352, at *20 (M.D. Pa. Sept. 24, 2021). Because, for the reasons outlined in the sections above, Orange has not pled a prima facie case for negligence, his claim for negligent infliction of emotional distress must fail on this alternative basis.

14

*Dist.*, 43 F. Supp. 3d 412, 431 (M.D. Pa. 2014) (non-specific allegation that plaintiff suffered "physical harm" as a result of emotional distress insufficient to survive motion to dismiss); *Abadie v. Riddle Memorial Hosp.,* 589 A.2d 1143, 1145–46 (Pa. Super. 1991) (dismissing intentional infliction of emotional distress claim where plaintiff failed to plead the nature of alleged physical injuries); *White v. Brommer,* 747 F. Supp. 2d 447, 465–466 (E.D. Pa. 2010) (dismissing intentional infliction of emotional distress claim for failure to plead requisite degree of physical harm).

## CONCLUSION

The only actionable claim that Orange has stated with sufficient plausibility is the one for assault and battery stemming from BOP staff's alleged punches to Orange's ribcage. The Court should dismiss the remainder of the Amended Complaint with prejudice.

Respectfully submitted,

GERARD M. KARAM
United States Attorney

/s/Richard D. Euliss
RICHARD D. EULISS
Assistant U.S. Attorney
DC 999166
228 Walnut Street
Harrisburg, PA 17101
Phone: 717-221-4462
Fax: 717-221-4493

Dated: January 16, 2024

15

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAMPOIRE ORANGE, | : | No. 1:23-cv-393 |
| **Plaintiff** | : | |
| | : | |
| v. | : | (Judge Jennifer P. Wilson) |
| | : | |
| UNITED STATES OF AMERICA, et al. | : | Electronically Filed |
| | : | |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE BY MAIL

    The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on January 17, 2024, she served a copy of the attached

## BRIEF IN SUPPORT OF MOTION TO DISMISS

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and its contents in the United States Mail at Harrisburg, Pennsylvania

**Addressee:**
Shampoire Orange
FMC Lexington
P.O. Box 14500
Lexington, Ky 40512

                                  /s/ Cristina M. Vazquez
                                  Cristina M. Vazquez
                                  Paralegal Specialist