## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAMPOIRE ORANGE, | : | Civil No. 1:23-CV-00393 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is the United States' motion to partially dismiss the amended complaint in the above captioned action.  (Doc. 30.)  The court will grant Defendant's motion and dismiss all Federal Tort Claims Act ("FTCA") claims except those associated with the alleged assault and battery by prison staff. Additionally, the court will lift the stay in Action No. 1:22-CV-01019 and consolidate this action and Action No. 1:22-CV-01019.

### PROCEDURAL HISTORY AND BACKGROUND

Shampoire Orange ("Plaintiff") filed a complaint in June of 2022 which was received and docketed by the court on June 29, 2022 under Action No. 1:22-CV-01019.  *Orange v. Keen*, No. 1:22-C-V-01019-JPW-EW, Doc. 1 (M.D. Pa.).  The June 2022 complaint raised a *Bivens* action against ten defendants stemming from an attack by a cellmate in December of 2021.  *Id.*

On March 6, 2023, the court received a docketed a complaint in the above captioned action bringing a Federal Torts Claim Act ("FTCA") claim against the United States of America and four additional defendants for the same December of 2021 cellmate attack.  (Doc. 1.)  Plaintiff paid the filing fee on April 6, 2023.  (Doc. 5.)  These five defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 14.)  Plaintiff filed a motion seeking leave to file an amended complaint.  (Doc. 19.)  The court entered an order to show cause as to why the two cases stemming from the same December 2021 cellmate attack should not be consolidated.  (Doc. 22.)  Only the five defendants responded stating no opposition to the consolidation of cases.  (Doc. 25.)  The court entered a stay in Action No. 1:22-CV-01019 to allow Plaintiff to file an amended complaint in the above captioned action, and to allow the five defendants in the above captioned action to file a motion to dismiss the amended complaint.  (Doc. 28.)  Plaintiff filed an amended complaint naming only the United States ("Defendant") as the opposing party.  (Doc. 29.)  Defendant then filed a motion to partially dismiss the amended complaint.  (Doc. 30.)  The court will now address this pending motion.

To begin, the court will summarize Plaintiff's allegations as set forth in the amended complaint.  On December 22, 2021, Plaintiff arrived in a wheelchair to USP-Canaan from USP-Coleman in Florida.  (Doc. 29, p. 5.)[1]  Plaintiff requested

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

placement in protective custody and was placed in the special housing unit
("SHU") on December 23, 2021.  (*Id*.)  Plaintiff was placed in a cell with a violent
inmate named Blaine.  (*Id*.)  On December 28, 2021 at 5:30 p.m., Plaintiff pushed
the emergency button in cell 140, and Officer Orth came to the cell door.  (*Id*.)
Plaintiff told Officer Orth that Inmate Blaine was threatening to cause him harm
and that he was afraid.  (*Id*.)  Officer Orth stated "you['re] not bleeding" and that
he did not care about his safety.  (*Id*.)

When Officer Orth left the range, Inmate Blaine started choking Plaintiff
while he was sitting in his wheelchair.  (*Id*.)  When Inmate Blaine ceased choking
Plaintiff, Plaintiff hit the emergency button again, and Officer Orth did not return
until his next 30-minue round, which was at 6:00 p.m.  (*Id*.)  Plaintiff told Officer
Orth that Inmate Blane just choked him, and Officer Orth turned the emergency
button light off and told Plaintiff he still didn't see any blood and did not care.
(*Id*.)

When Officer Orth left, Inmate Blaine began punching Plaintiff in the head
and face while he was sitting in his wheelchair.  (*Id*.)  Plaintiff fell out of the
wheelchair, and Inmate Blaine continued to punch him in the head and face.  (*Id*.)
Plaintiff sat up and pushed the emergency button.  (*Id*.)  Plaintiff remained on the
floor until Officer Orth did his security round at 6:40 p.m.  (*Id*.)  Officer Orth came
to the cell and Plaintiff showed him his bleeding and swollen face.  (*Id*.)  At this

point, Inmate Blaine was in the back of the cell and Plaintiff was sitting by the door. (*Id*.) Officer Orth opened the tray flap of the door, told the inmates to stop fighting, and started spraying Plaintiff directly in the face with OC spray. (*Id*.)

Plaintiff laid back down on the floor. Plaintiff heard Lieutenant Keen tell Inmate Blaine to go to the shower and then started shooting Plaintiff in the back with a pepper ball gun. (*Id*.) After twelve to fifteen shots to the back, Lieutenant Keen told Plaintiff to come to the door and handcuff up. (*Id*.) Plaintiff got in his wheelchair and Lieutenant Keen told him to handcuff without the wheelchair. (*Id*.) Both Plaintiff and Inmate Blaine were handcuffed. (*Id*.) Lieutenant Keen and Officers Price and Houck were present when the cell door was opened. (*Id*.) Plaintiff was escorted by Officers Price and Houck to a room with a shower and placed in the shower. (*Id*., p. 6.) Plaintiff was then struck two times in the back right side ribs. (*Id*.) Lieutenant Keen stated "you want to be a pain in the ass." (*Id*.) Plaintiff was then dragged out to a stand up holding cell. (*Id*.) He was told not to say anything about the punch to the ribs when he received his medical assessment. (*Id*.)

Plaintiff was then taken back to the cell by himself. (*Id*.) Plaintiff says he then passed out on the floor in the cell due to pain. (*Id*.) Plaintiff then hit the emergency button at 12:00 a.m. and told the third shift that he could not breathe, and that he thought his ribs were broken. (*Id*.) The third shift told Plaintiff they

4

would contact the medical department.  (*Id*.)  Plaintiff remained on the floor until the next morning without medical attention.  (*Id*.)  He then wrote a sick call about the ribs and the pain.  (*Id*.)

A week later, Plaintiff was seen by a physician assistant.  (*Id*.)  On January 25, 2022, x-rays were completed that showed two ribs were broken from the officer's assault.  (*Id*.)  Plaintiff also states that he suffered a concussion, an abrasion to the head, a laceration on the right side of the face and nose, and a cracked dental plate from the inmate assault.  (*Id*.)

Plaintiff filed an administrative claim, but had not received an answer about the claim at the time of the amended complaint.  (*Id*.)

Plaintiff is raising claims for negligence per se, assault and battery, intentional infliction of emotional distress, "negligence and gross negligence," negligent infliction of emotional distress, and "negligence to use reasonable care." (*Id*., p. 4.)

## VENUE

Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at the United States Prison Canaan ("USP-Canaan"), located in Wayne County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b); (Doc. 29, p. 5).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of*

*Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.  *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

**DISCUSSION**

The basis of the amended complaint is the FTCA.  (Doc. 29.)  "The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated."  28 U.S.C. § 2674.  "The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances.'"  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)).  Under the FTCA, federal district courts have jurisdiction over civil actions against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Under the FTCA, the United States will only be liable for conduct by government employees acting within their scope of employment. *Matsko v. United States*, 372 F.3d 556, 559 (3d Cir. 2004).

## A. Plaintiff's Claims Based on Cellmate Assignment Will Be Dismissed Pursuant to the Discretionary Function Exception.

There are a number of statutory exemptions to the government's liability under the FTCA.  One such exemption is the "discretionary function exemption,"

8

which provides that liability may not be premised on a claim against a government

employee which is "based upon the exercise or performance or the failure to

exercise or perform a discretionary function or duty."  28 U.S.C. § 2680(a).

> In a federal prison setting:

> To determine if the discretionary function exception applies, a court must first determine if the challenged conduct involves an "'element of judgment or choice.'"  *See Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000) (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) and *Berkovitz v. United States*, 486 U.S. 531, 536 (1988), and noting that there is no element of judgment or choice if "'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow'").  If the challenged conduct involves an element of judgment, a court must go on to consider "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'"  *Id.*

*Brown v. U.S. Justice Dep't*, 271 F. App'x. 142, 145 (3d Cir. 2008).

Here, Plaintiff's tort claim arises out of prison officials' alleged negligence

when housing a protected inmate with a violent inmate in alleged violation of

Bureau of Prisons ("BOP") policy.  (Doc. 29, p. 4.)  These circumstances,

however, fall within the discretionary function exemption:

> Courts within this circuit and others have uniformly held that federal prisoners' FTCA claims for injuries by fellow inmates are barred by the discretionary function exception.  *See, e.g.*, *Donaldson v. United States*, 281 F. App'x 75, 76–78 (3d Cir. 2008); *Castillo v. United States*, 166 F. App'x 587, 589 (3d Cir. 2006); *Michtavi v. United States*, C.A. No. 4:07–CV–0628, 2009 WL 578535, at *9–10 (M.D. Pa. Mar. 4, 2009); *Baker v. United States*, C .A. No. 06–147, 2006 WL 3717382, at *6 (W.D. Pa. Dec. 14, 2006); *Macias v. United States*, C.A. No. 05–1445, 2006 WL 1843111, at *3–4 (D. N.J. June 30, 2006); *Redmond v. United States*, C.A. No. 4:04–CV–231, 2006 WL 709347, at *3–4 (M.D. Pa.

Mar. 20, 2006); *Graham v. United States*, C.A. No. 97–1590, 2002 WL
188573, at *4 (E.D. Pa. Feb. 5, 2002). While prison officials have a
statutory duty to provide for the "safekeeping" of inmates, 18 U.S.C. §
4042, this statute leaves the implementation of these duties to the
discretion of prison officials, and "how best to protect one inmate from
the threat of attack by another is of the kind that the discretionary
function exception as designed to shield." *Donaldson*, 281 F.App'x at
77.

*Rinaldi v. United States*, No. 09-1700, 2010 WL 4642498, *4 (M.D. Pa. Nov. 9,

2010).

In determining that the discretionary function exemption applies to these

circumstances, the Third Circuit has stated:

[T]he judgment involved in this case, i.e. how best to protect one inmate
from the threat of attack by another—"is of the kind that the
discretionary function was designed to shield." *Mitchell [v. United
States]*, 225 F.3d [361,] 363 [(3d Cir. 2000)]. Prison administrators
should be afforded wide-ranging deference in implementing and
executing their policies because their discretion is needed to preserve
internal discipline and maintain institutional security. *Bell v. Wolfish*,
441 U.S. 520, 547-48, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Supreme
Court authority underscores the principle that prison officials have
discretionary power over the safety of the institutions they operate. *See
Rhodes v. Chapman*, 542 U.S. 337, 349 n. 14, 101 S.Ct. 2392, 69
L.Ed.2d 59 (1981); *see also Whitley v. Albers*, 475 U.S. 312, 321-22,
106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

Likewise, courts of appeals have applied the discretionary function
exception to bar an inmate's claims for injuries he received while
incarcerated. *See Calderon [v. United States]*, 123 F.3d [947,] 948, 951
[(7th Cir. 1997)] (discretionary function exception barred FTCA claim
despite evidence that BOP officials knew of the threat to inmate and
took no steps to protect him); *Cohen*, 151 F.3d [1338,] 1344 [(11th Cir.
1998)] (discretionary function exception shielded the BOP from FTCA
liability, where an inmate that the BOP misclassified attacked and
injured the plaintiff); *Alfrey v. United States*, 276 F.3d 557, 565 (9th

10

Cir. 2002) (where BOP officials' decision not to relocate an inmate in the face of death threats from his cellmate resulted in the inmate's death, "what steps to take in response to a reported threat" required correctional officers to "set priorities among all extant risks: the risks presented by the reported threat, along with the other risks that inevitably arise in a prison," all of which "implicate social and public-policy considerations."). In accordance with these authorities, we find that the BOP's decisions about how to protect [inmates from assaults by fellow prisoners] are the kinds of judgments that the discretionary function exception was designed to protect.

*Donaldson*, 281 F.App'x at 77–78.

These principles apply here and are fatal to this particular FTCA claim. Housing decisions are a matter of discretion. While Plaintiff cites to BOP policy in the amended complaint, Doc. 29, p. 4, and then names the policy in the brief in opposition to the motion to dismiss, Doc. 36, the Third Circuit has made clear that "[p]rison administrators should be afforded wide-ranging deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security." *Donaldson*, 281 F.App'x at 77 (citing *Bell*, 441 U.S. at 547–48). The FTCA's discretionary function exemption thus shields the United States from liability stemming from housing decisions. Plaintiff's FTCA claim based on negligence from the housing placement is barred and will be dismissed with prejudice.

**B. Defendants' Challenges to Plaintiff's Remaining Claims are Unopposed.**

In the brief in opposition to Defendant's motion to dismiss, Plaintiff only contests application of the FTCA's discretionary function exemption.  (Doc. 36.) He does not contest the motion to dismiss his remaining claims.  (*Id.*)  A brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim.  *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to address it in his opposition brief but failed to do so);  *D'Angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (finding claims waived where plaintiff failed to address defendant's argument in his brief in opposition to a motion to dismiss). Accordingly, other than the negligent housing placement claim, Plaintiff's claims are deemed abandoned and will be dismissed.

## CONCLUSION

For the above stated reasons, the court will grant Defendant's partial motion for summary judgment and dismiss all FTCA claims except those arising out of the alleged assault and battery by prison staff.  The court will consolidate this action with Action No. 1:22-CV-01019 with the surviving claims in the instant amended complaint to be deemed as a supplemental complaint to the operative complaint in Action No. 1:22-CV-01019.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 26, 2024